**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. DANNY VILLAREAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. CIV-17-397-HE |
| vs. ) | |
| ) | |
| 1. JETTA CORPORATION ) | JURY TRIAL DEMANDED |
| ) | ATTORNEYS LIEN CLAIMED |
| Defendant. ) | |

**COMPLAINT**

**COMES NOW** the Plaintiff, Danny Villareal, an individual, ("Plaintiff") and for his claims for relief against Jetta Corporation ("Jetta"), and alleges and states as follows:

**JURISDICTION AND VENUE**

1. This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C §§ 2000 *et seq*.

2. Jurisdiction over the subject matter of this action is vested in this Court pursuant to 42 U.S.C. § 2000 et seq.

3. Venue is proper in this district and division under 42 U.S.C. § 2000 e-5 (f)(3), because the unlawful employment practice occurred within this district and division by a defendant residing within this district and division.

4. State law claims are permitted by supplemental jurisdiction under 28 U.S.C. § 1367 et seq.

5. At all times material hereto, Plaintiff, was a resident of the State of Oklahoma.

6. The Plaintiff timely filed a charge with the Equal Employment Opportunity Commission (hereinafter "E.E.O.C") and gave the agency ample information in which they could investigate his legal claims, and informed the agency of other evidence or information within his control.

7. The E.E.O.C. mailed their Notice of Right to Sue on January 12, 2017, closing their investigation of Plaintiff's claim.

8. The Plaintiff was given a "right to sue" on January 12, 2017; this action is timely filed within ninety days of receipt of "right to sue letter."

## PARTIES

9. Plaintiff is a resident of Tulsa County, State of Oklahoma.

10. Jetta Corporation is incorporated in the state of Oklahoma with its principal place of business located at 425 Centennial Boulevard, Edmond, Oklahoma within the jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

11. Plaintiff was employed by Jetta Corporation as an outside sales representative.

12. Plaintiff's primary job was to contact builders and contractors to sell Jetta's tubs and whirlpool baths.

13. Plaintiff was hired to develop the Tulsa market in 2001. After Plaintiff was hired, average sales more than doubled. In 2008, Jetta decided to move from their showroom and sell their products through Metro Builders. Supply. Plaintiff decided to quit Jetta and took an offer with Architectural Market. Within a two-year period, Jetta sales dropped from $85,000 to $15,000 per

month. After Plaintiff was rehired in 2011 average sales went from $15,000 per month to $70,000 per month.

14. Plaintiff consistently won various sales contests which included winning a year long sales contest which resulted in a Bahama cruise and cash bonus in 2004. For the duration of his employment at Jetta, Plaintiff has met or exceeded his sales quota at Jetta.

15. Plaintiff was known inside the company as "Danny Grand" because his average selling price per bathtub was consistently over $1,000 (an all-time company high). Plaintiff was such a successful salesman that his customers called him "Mr. Jetta."

16. In the fall of 2015, the President of the company, Sarah Fields, greeted him at a quarterly sales meeting and told him that "he was a legend" and to keep up the good work.

17. Due to the fast growth of the Tulsa office, Jetta hired an inside salesperson named Shanell Horton to help take orders at the Tulsa office in 2014. Shanelle Horton was paid hourly and less than Plaintiff.

18. All went well for two years. Plaintiff contacted builders and contractors in his outside sales capacity and delivered the tubs directly to the builders. Shanell Horton took incoming orders and performed various administrative functions.

19. In September 2015, Jetta placed Mike Tucker ("Tucker") in a supervisory capacity over the Tulsa office. He would occasionally drive to Tulsa to check on it.

20. Shanell Horton is a petite blond Caucasian female with above average looks in her mid-thirties.  Plaintiff is a stocky Hispanic gentleman in his early sixties.  Mike Tucker is a middle-aged Caucasian male of average looks.

21. From the first month that Tucker was appointed as Plaintiff's supervisor, Tucker demonstrated a clear preference for Shanell Horton over Plaintiff because she was an attractive female.  Tucker flirted with her, high-fived her, complimented her on work-related and non work-related accomplishments, and constantly demanded that Plaintiff "be more like Shanell" right in front of her.

22. Tucker would take Shanell Horton on certain sales calls to Plaintiff's customers wearing a tight black dress.  On at least one occasion they were gone for much longer than a sales meeting would normally take.

23. Tucker would ask detailed questions that no one could answer in front of Shanell Horton to humiliate Plaintiff and show off for her.

24. Tucker only congratulated Shanell Horton when the Tulsa office had seven record-breaking months in a row due mostly to Plaintiff's efforts.

25. Tucker gave one of Plaintiff's biggest customers to Shanell Horton.

26. After Plaintiff achieved another record-breaking month of sales, Tucker grilled Plaintiff again over his performance, accused him of being unmotivated and threatened to fire him.  He told him that he was "just an overpaid delivery boy."

27. Tucker began a continuous campaign of micro-managing Plaintiff and nit-picking him over minor details of his work which had never been a problem

before because he was and continued to be one of the top salesman in the company. He did not treat Shanell Horton in this negative manner.

28. On June 16, 2016 the temperature reached 115 degrees heat index. Tucker took Plaintiff into the hot unconditioned warehouse and grilled him for hours about his performance and sales, despite the fact that he had exceeded quota every month so far for the year. He threatened to make Plaintiff inside sales with a considerable decrease in pay and give Shanell Horton his outside sales job.

29. When Plaintiff began to get light-headed from Tucker's statement and from the heat in the warehouse plaintiff said he might faint, Tucker said, "Ok but if you faint don't expect me to give you mouth-to-mouth I'm married…maybe Shanell would." Plaintiff then called Scott Craddick, CFO of Jetta, on or about Wednesday, June 29, 2016 and reported Tucker's conduct.

30. Craddick promised to respond to Plaintiff's concerns by Friday, July 1, 2016. He never responded.

31. In mid-July of 2016, Plaintiff filed a complaint with the EEOC. A few days after Jetta received notice of Plaintiff's complaint, it terminated him.

32. Plaintiff was terminated on August 19, 2016. On the date Plaintiff was terminated, he was $60,000 ahead of his sales quota for the year.

33. Plaintiff suffers from a severe case of plaque psoriasis.[1] Due to the severity of his condition, he requires a drug called Stelara. Stelara costs an insurance company $28,000 per shot, and Plaintiff needed four shots per year to control it.

34. Since he was terminated and lost his health insurance benefits, he has missed three Stelara shots and his condition has flared up, causing severe pain, discomfort and embarrassment.

35. Since Plaintiff was terminated, the sales in the Tulsa region have dropped.

36. Plaintiff's plaque psoriasis has been so painful that it has caused him to be unable to work as much as he could to make money.

## FIRST CLAIM FOR RELIEF
**DISCRIMINATION BASED ON RACE (TITLE VII) AND THE OKLAHOMA ANTI-DISCRIMINATION ACT (OADA) 25 O.S. § 1301 ET SEQ**

37. The foregoing paragraphs are incorporated as if they were set out herein.

38. Plaintiff was treated differently than Shanell Horton because she was a white woman and he was a Hispanic man. Tucker treated Shanell Horton better than he treated Plaintiff because she was a woman whom he wished to impress.

39. Tucker referred to him as "boy" and implied Plaintiff was homosexual by objecting to giving him unsolicited mouth-to-mouth resuscitation.

40. Plaintiff placed the chief financial officer of the company on notice of this unfair treatment, no changes were made, and he was terminated in response.

---

[1] Plaque psoriasis causes a painful scaly rash to spread over the skin. Plaintiff has a severe case which can only be stopped with Stelara.

41. Defendant engaged in unlawful employment practices by terminating the Plaintiff and treating him differently than a similarly situated Caucasian female and has violated Title VII of the Civil Rights Act of 1964.

42. If Plaintiff had been a pretty blond woman with the same outstanding sales numbers willing to flirt with Tucker like Shanell Horton did, he never would have been fired.

43. By continually subjecting the Plaintiff to disparate treatment based on race and terminating the Plaintiff's employment, Defendant violated Title VII of the Civil Rights Act of 1964 and the Oklahoma Anti-Discrimination Act (OADA) 25 O.S. § 1301 et seq.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant's management and executives;

d. Attorney fees and the costs and expenses of this action;

e. Equitable Relief.

f. Such other relief as the Court deems just and equitable.

### SECOND CLAIM FOR RELIEF
### (HOSTILE WORK ENVIRONMENT)

44. The foregoing paragraphs are incorporated as if they were set out herein.

45. Tucker's actions constituted a hostile work environment for Plaintiff.

46. The Defendant allowed a hostile work environment to persist after Plaintiff reported the harassment and discrimination perpetrated by Tucker.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant'ss management and executives;

d. Attorney fees and the costs and expenses of this action;

e. Equitable Relief.

f. Such other relief as the Court deems just and equitable.

### THIRD CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF TITLE VII)

47. The foregoing paragraphs are incorporated as if they were set out herein.

48. The Plaintiff engaged in protected opposition to discrimination by filing a complaint with the Equal Employment Opportunity Commission ("EEOC").

49. The Defendant engaged in adverse and unlawful employment practices by terminating him for engaging in protected activity when he reported the discrimination and harassment to the CFO of Jetta Corporation and the EEOC in violation of Title VII of the Civil Rights Act of 1964.

50. Plaintiff was fired a few days after the Defendant received the EEOC notice.

51. By taking adverse actions against the Plaintiff for his participation in protected activity, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant's management and executives;

d. Attorney fees and the costs and expenses of this action;

e. Equitable Relief.

f. Such other relief as the Court deems just and equitable.

### FOURTH CLAIM FOR RELIEF
### (DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA)

52. The foregoing paragraphs are incorporated as if they were set out herein.

53. The Defendant engaged in unlawful employment practices by replacing him with a younger, prettier employee because she was younger and prettier.

54. If Plaintiff been a young, pretty blond with the same outstanding sales numbers, Plaintiff would never have been terminated.

55. The foregoing conduct violates the ADEA of 1967 as amended, 29 U.S.C. § 621 et seq.

56. Plaintiff experienced disparate treatment compared to co-workers under the age of forty (40) with regard to job assignments, training, discipline, benefits, and termination from employment in violation of the ADEA.

57. Defendant's discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff to suffer humiliation, embarrassment, and emotional distress.

58. Defendant committed the act alleged with malice or reckless indifference to the protected rights of the Plaintiff. Plaintiff is thus entitled to recover punitive damages in an amount to be determined by a jury.

59. Upon information and belief, Plaintiff's termination was motivated in by his age, in violation of the ADEA.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant's management and executives;

d. Attorney fees and the costs and expenses of this action;

e. Equitable Relief.

f. Such other relief as the Court deems just and equitable.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**SALMON LAW FIRM,**

**s/ CALEB M. SALMON**
_____
Caleb M. Salmon, OBA No. 32272
SALMON LAW FIRM
8301 E. 51st Street, Suite 228
Tulsa, Oklahoma 74145
Telephone: (918) 608-1856
Facsimile:  (918) 608-1856
*Attorney for Plaintiff*

## VERIFICATION

**STATE OF OKLAHOMA** }
                                            SS.
**COUNTY OF TULSA**

I, Danny Villareal, of lawful age and sound mind, and being first duly sworn upon oath, state that I am a Plaintiff in the above-named matter, that I have read the foregoing instrument and that all statements contained therein are true and correct to the best of my knowledge and belief.

_____
Danny Villareal

Subscribed and sworn to before me on this 4 day of April, 2017, 2017.

My Commission Expires:

_____
Notary Public

Caleb M. Salmon
NOTARY PUBLIC - STATE OF OKLAHOMA
Commission #16010073
My Commission Expires Oct 24, 2020